IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MERRI SUE CLARK; RICHARD W. CLARK,

                  Plaintiff,

    v.

ANNETTE PHELPS, et al.

                  Defendants.

_____

Civ. No. 6:21-cv-1139-MC

OPINION AND ORDER

**MCSHANE, Judge**:

      Plaintiffs, proceeding *pro se*, filed this action following the parties' participation in Oregon's Foreclosure Avoidance Program ("OFAP"). Plaintiffs have filed numerous other actions challenging the foreclosure proceedings. Last year, this Court dismissed a similar action brought by Plaintiff Richard Clark. *See Richard W. Clark, as Trustee of the Richard W. Clark and Merri Sue Clark Revocable Living Trust, v. LSF9 Master Participation Trust, et al.*, Civ. No. 6:20-cv-295-MC, 2022 WL 900540 (D. Or.). There, Clark sought a declaratory judgment stating Defendants had no legal or equitable rights in the note or deed of trust and no standing to institute foreclosure proceedings on the property. *Id.* at 1. The Court noted that because Clark admitted, during 2009 bankruptcy proceedings, that Wells Fargo was a secured creditor of the loan at issue, Clark was judicially estopped from later taking the opposite position. *Id.* at 4. The Court also concluded that neither Wells Fargo nor its successors in interest were barred by claim and/or issue preclusion from bringing judicial or nonjudicial foreclosure proceedings going forward. *Id.* at 3.

In this action, Plaintiffs allege Defendant Quality Loan Service Corporation of Washington, acting as an agent of Defendant U.S. Bank Trust, initiated wrongful foreclosure proceedings against Plaintiffs. Fourth Am. Compl. ¶ 20. Many of Plaintiffs claims stem from the argument that any foreclosure is barred due to the dismissal of Wells Fargo's attempted judicial foreclosure several years ago. As noted above, however, the Court rejected that argument in the 2020 action Clark brought as Trustee of the Clark's Living Trust. *Clark*, 2022 WL 900540 at *3-4. There, the Court also rejected Clark's argument that any foreclosure claims are barred because the state court dismissed Wells Fargo's judicial foreclosure claims with prejudice. *Id.* at 2-3. This Court held Clark's argument failed for several reasons including: (1) the state court only dismissed Clark's claims (and not Wells Fargo's claims) with prejudice; and (2) claim and issue preclusion did not apply as nonjudicial foreclosure proceedings did not qualify as "successive litigation." *Id.* As in the earlier case, Plaintiffs seek declaratory relief:

> to declare that none of the Defendants have no [sic] legal or equitable rights in the Note or the DOT for purposes of foreclosure and that none of the Defendants have no [sic] legal standing to institute or maintain foreclosure on the Property, and to further permit Plaintiffs to seek permanent injunctive relief forever barring any of the Defendants from ever seeking to foreclose on the Property.

*Id.* at ¶ 34.

Plaintiffs also bring a fraud claim against Defendant U.S. Bank Trust and its agent, Defendant Caliber Home Loans, Inc. For that claim, Plaintiff allege those Defendants made false statements claiming Caliber was the successor in interest to Wells Fargo and entitled to enforce the Note and Deed of Trust. *Id.* at ¶ 47.

Plaintiffs bring an unlawful debt collection claim against Defendant Fay. Plaintiffs allege Fay failed to provide the name of the original creditor or the date in which the debt buyer purchased the debt and initiated a legal action against Plaintiffs despite failing to produce that information.

Plaintiffs bring unlawful business practices claims against Fay and Caliber for assessing charges and initiating foreclosure proceedings against Plaintiff without the right to do so. Plaintiffs bring unlawful business practices claims against Burke, Phelps, Curtis, and the Mediation Case Manager ("MCM") for issuing Certificates of Compliance related to the foreclosure proceedings.

Plaintiffs bring claims of slander of title and defamation against U.S. Bank, Quality Loan Service Corp., and Fay. These claims rely on the Defendants' recordings of certain documents in the county land records such as a Notice of Default and Election to Sell.

Defendants move to dismiss the Fourth Amended Complaint, to strike the Fifth Amended Complaint, and ask the Court to take judicial notice of certain documents. Plaintiffs oppose the motions and instead move to remand this action to state court.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could

not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Before turning to the various pending motions on the merits of Plaintiffs' claims, the Court must determine if it has jurisdiction over this action or, in the alternative, if Plaintiffs' claims against non-diverse parties destroy diversity jurisdiction. Plaintiffs argue that because Defendants April Curtis and Annette Phelps are Oregon residents, complete diversity is lacking and the Court must remand this action. Defendants counter that because these Defendants were fraudulently joined merely to defeat diversity, the parties are diverse and this Court has jurisdiction.

In determining if joinder is fraudulent or not, the court may look beyond the pleadings. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1064,1067-68 (9th Cir. 2001) (looking to affidavit defendant submitted to establish fraudulent joinder). The court looks at the provided evidence to assess if the non-diverse defendant has "no real connection with the controversy." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). If a plaintiff cannot state a cause of action against a resident defendant joined into the action, joinder is fraudulent and the court "may ignore the presence of that defendant for the purpose of establishing diversity." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). Absent fraud in the pleadings, joinder is fraudulent when Plaintiff lacks the ability "to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter*, 582 F.3d at 1044).

For multiple reasons, the Court concludes Plaintiffs cannot state a cause of action against Phelps or Curtis and those Defendants are fraudulently joined. Plaintiffs' claims against Phelps

and Curtis revolve around the issuance of Certificates of Compliance, in April 2018 and again in

December 2019, under Oregon's Foreclosure Avoidance Program ("OFAP"). Plaintiffs allege that

neither Wells Fargo's attempted judicial foreclosure nor U.S. Bank's attempted nonjudicial

foreclosure "would have occurred but for the wrongful issuance of Certificates of Compliance by

Defendants April Curtis, Anette Phelps, and Mediation Case Manager acting under color of law."

Am. Compl. ¶ 4; ECF No. 1-1. Plaintiffs allege Phelps and Curtis issued the certificates despite

failing to require the alleged beneficiaries to produce required "documents sufficient to ensure that

the person or entity claiming to be the beneficiary is the actual beneficiary under Oregon law." *Id.*

at ¶ 10. Plaintiffs allege

> Annette Phelps is the Senior Operations Manager of Mediation Case Manager
> ("MCM"), the company that manages the foreclosure mediation program for the
> Attorney General of Oregon. Phelps is the person responsible for implementing the
> policies of MCM and overseeing its compliance department. April Curtis was
> employed at all relevant times by MCM as a legal compliance officer.

*Id.* at ¶ 72.

Plaintiffs allege that Phelps made incorrect statements as to the documents the alleged

beneficiaries had to provide under the OFAP. *Id.* at ¶¶ 74-77. Plaintiffs allege Caliber never

"certified that the heavily xeroxed Promissory Note without endorsements was a true copy." *Id.* at

¶ 78. Plaintiffs allege Phelps "facilitated Caliber's commission of the unfair trade practice" when

"Phelps certified that an irrelevant document complied with the document submission

requirements of ORS 86.729, even though defendant Caliber failed to certify that the promissory

note was a true copy." *Id.* at ¶ 95. Near the end of the Amended Complaint, Plaintiffs summarize:

> The Oregon Department of Justice hired Mediation Case Manager ("MCM") to
> manage the foreclosure mediation program. Annette Phelps is the Senior
> Operations Manager for MCM, and April Curtis, at all relevant times, was a legal
> compliance officer for MCM
>
> As legal compliance officer, April Curtis knew or should have known that neither
> Caliber nor U.S. Bank Trust certified that the promissory note that one (or both)

submitted was a "true copy" as required by Oregon Laws, Chapter 304, section 3(4)(b)(ii) because it was her duty [to] examine the documents to ensure that the "beneficiary" complied with the law.

Curtis knew or should have known that Caliber and/or U.S. Bank Trust breached their duty to refrain from committing unfair trade practices when one (or both) submitted a promissory note without certifying that it was a true copy of the original.

Nevertheless, Curtis gave substantial assistance to U.S. Bank Trust by signing and issuing a Certificate of Compliance in which she certified that U.S. Bank Trust had complied with Oregon Laws, Chapter 304, section 3(4)(b)(ii) when she knew or should have known that U.S. Bank Trust had not in fact complied. (Curtis affirmatively checked the following statement: "The beneficiary and/or its agent complied with the requirements of Oregon Laws 2013, sections 2, 3, and 4.").

Phelps, as Senior Operations Manager, had a duty to ensure that Curtis, the legal compliance officer, performed her job as required by Oregon law. Instead, she provided substantial assistance to Curtis in her unlawful certification of U.S. Bank Trust's compliance with Oregon Laws, Chapter 304, section 3(4)(b)(ii). This substantial assistance allowed U.S. Bank and/or Caliber to coerce the Clarks into payments totaling $3,527.07 as well as causing additional damages in the amount of $1,000,000.00.

*Id.* at ¶¶ 120-124

The Court concludes Plaintiffs state no valid claim against Phelps or Curtis, the only non-diverse Defendants named in the Amended Complaint. First, neither Phelps nor Curtis are real parties in interest. As demonstrated above, the Amended Complaint clearly alleges that in issuing the Certificates of Compliance, Phelps and Curtis acted within the scope of their employment of Defendant Canopy dba MCM. As Phelps and Curtis were merely agents for Canopy, they are not real parties in interest. *Lentz v. Oregon Growers' Co-op. Ass'n*, 116 Or. 683, 690 ("An action cannot be prosecuted for a principal in the name of a 'mere' agent who has no personal interest in the subject-matter."); *Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. July 26, 2001) ("suing an individual in his official capacity is treated the same as suing the entity itself").

Additionally, Plaintiffs specifically allege the "Oregon Department of Justice hired Mediation Case Manager ("MCM") to manage the foreclosure mediation program." Am. Compl.

6 – OPINION AND ORDER

¶ 120. Because Phelps and Curtis acted within the scope of their employment by MCM (as facilitators of the OFAP) in issuing the Certificates, they are immune from liability for their actions. ORS 86.729(6)(b) (noting "a facilitator is not civilly liable for any act or omission done or made while engaged in efforts to assist or facilitate a resolution conference unless the facilitator acted or made an omission in bad faith, with malicious intent or in a manner that exhibited a willful or wanton disregard of the rights, safety or property of another person."). Plaintiffs' allegations allow an inference that Phelps and Curtis acted, at worst, in a negligent manner. *See* Am. Compl. ¶¶ 121-123 (noting Defendants "knew or should have known" that the alleged beneficiaries failed to follow the statutory requirements). Similarly, because Plaintiffs allege the Oregon DOJ hired MCM to manage the program, ORS 30.265(6)(c) renders Phelps and Curtis "immune from liability" for any discretionary duty (i.e., issuing, or declining to issue, a Certificate of Compliance) made in facilitating the OFAP. ORS 30.265(6)(c) ("Every public body *and its . . . agents acting within the scope of their employment* or duties . . . are immune from liability for . . . any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.") (emphasis added).

Perhaps most importantly, as this Court and other Oregon district courts have found, there is no private right of action for claims alleging a violation of the OFAP. As this Court concluded in *Munson v. Wells Fargo Bank*:

> If a party alleges a violation of the Oregon Foreclosure Avoidance Program, ORS 86.741(3) provides a remedy under ORS 646.607 as an "unlawful practice." *Gosha v. Bank of N.Y. Mellon Corp*., 2016 WL 7238927 at *6-7, No. 3:16-cv-00073-BR (D. Or. Dec. 13, 2016). In turn, claims under ORS 646.607 may be prosecuted only by the State of Oregon. There is no private right of action for violations of ORS 646.607. *Gosha* at *7.

2018 WL 2917347 at *3 (D. Or. June 11, 2018).

If a plaintiff cannot state a cause of action against a resident defendant joined into the action, joinder is fraudulent and the court "may ignore the presence of that defendant for the purpose of establishing diversity." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). Here, Plaintiffs do not state a claim against Phelps or Curtis in the Amended Complaint. Absent Phelps or Curtis, the parties are diverse and this Plaintiffs' motion to remand, ECF No. 15, is DENIED.

Turning to the other pending motions, for a variety of reasons, the Defendants move to dismiss Plaintiffs' Fourth Amended Complaint.[1] The Court agrees with Defendants that the underlying theme of Plaintiffs' arguments is based on a theory this Court rejected in Plaintiffs' 2020 action. As noted above, in that action, Clark sought a declaratory judgment stating Defendants had no legal or equitable rights in the note or deed of trust and no standing to institute foreclosure proceedings on the property. *Clark, as Trustee of the Richard W. Clark and Merri Sue Clark Revocable Living Trust*, 2022 WL 900540 at *1. Because Clark admitted during 2009 bankruptcy proceedings that Wells Fargo was a secured creditor of the loan at issue, Clark was judicially estopped from taking the opposite position in future actions. *Id.* at 4. The Court also concluded that neither Wells Fargo nor its successors in interest were barred by claim and/or issue preclusion from bringing judicial or nonjudicial foreclosure proceedings. *Id.* at 3.

This Court's rulings in the 2020 Clark action bar many of Plaintiffs' claims here. For example, Plaintiffs now allege:

---

[1] U.S. Bank and Caliber move the Court to take Judicial Notice of certain documents. ECF No. 41-1; ECF No. 16-1. The documents include filings in previous actions and certain documents incorporated by reference, or relied upon, in the numerous complaints. Generally, a court may take judicial notice of "matters of public record" under Federal Rule of Evidence 201 so long as the facts are not subject to reasonable dispute, are incorporated into the complaint, and are from sources whose accuracy cannot be reasonably questioned. *Munson v. Wells Fargo Bank*, 2018 WL 6515131, at *2 (D. Or. Dec. 11, 2018,) (listing cases). All of the exhibits attached to the RJN are properly subject to judicial notice.

Defendant USBTE has taken the position that it is Wells Fargo's successor in interest and has claimed to be in privity with Wells Fargo as to the loan the subject of this action. Despite the Dismissal With Prejudice in the Consolidated Action which resolved all claims between the parties, Defendant USBTE instituted a nonjudicial foreclosure based on the same loan, as to the same property, and the same borrowers in the Consolidated Action and relying on the same facts and documentation the subject of the Consolidated Action and relying on the same facts and documentation the subject of the Consolidated Action. The nonjudicial foreclosure action was unsuccessful.

Defendant Fay, thereafter claiming to be the successor "lender" (but in fact operating as the claimed "servicer" for Defendant USBTE), initiated another legal action against Plaintiffs which relied on the same facts and documents as the Consolidated Action which was dismissed with prejudice and resolved "all claims" between the parties. This second foreclosure action was initiated after Defendant Curtis signed a pre suit Certificate of Compliance which was required by law as a condition precedent to the institution of a foreclosure, based on guidelines provided by Defendant Burke.

Fourth Am. Compl. ¶¶ 17-19.

These claims, however, are barred by this Court's ruling in the 2020 action that (1) Plaintiffs are judicially estopped from denying Wells Fargo, or its successors in interest, were secured creditors of the loan at issue, and (2) neither Wells Fargo nor its successors in interest were barred by claim and/or issue preclusion from bringing judicial or nonjudicial foreclosure proceedings. *Clark, as Trustee of the Richard W. Clark and Merri Sue Clark Revocable Living Trust*, 2022 WL 900540 at \*3-4. For the same reasons, Plaintiffs' fraud claim against U.S. Bank and Caliber necessarily fails. That claim relies on the allegations that Caliber made multiple false representations relating to the fact that it was Wells Fargo's successor in interest with respect to the note and deed and entitled to enforce the same. Fourth Am. Compl. ¶ 47. For the same reasons, Plaintiffs Slander of Title and Defamation claims against U.S. Bank, QLS, and Fay necessarily fail. Like the claims above, these claims rely on the argument that Defendants were not successors in interest to Wells Fargo.

9 – OPINION AND ORDER

Although Plaintiffs are precluded from bringing their fraud claim, the Court agrees with Defendants that in addition to the preclusion issue, Plaintiffs' fraud claim is barred by the two-year statute of limitations. Plaintiffs filed this action on June 8, 2021. They allege Caliber stated it was the beneficiary and intended to induce Plaintiffs to make payments to Caliber. Am. Compl. ¶¶ 30-34. Plaintiffs attached a November 2, 2017 letter from Caliber to their Amended Complaint. That letter specifically states that Caliber claimed to be the servicer of the loan at issue. Ex. R, 1. And the letter was in response to Plaintiffs' own letters to the Oregon Department of Justice, dated October 18 and 23, 2017, where Plaintiffs disputed Caliber's ability to enforce the note or deed of trust. *Id.* As Plaintiffs disputed Caliber's right to service the loan no later than November 2, 2017, but did not file this action until June 8, 2021, their fraud claim is time-barred.[2]

Similarly, Plaintiffs' claim against Ruiz for Deceit, based on Ruiz's letter dated November 2, 2017, is barred by that claim's two-year statute of limitations. First Am. Compl. Ex. R. To the extent that the any deceit claim against Caliber is not time-barred, Plaintiffs cannot state a claim. To state a claim for deceit, Plaintiffs must establish, amongst other elements, that they were ignorant of the falsity of Caliber's statement (that it was authorized to enforce the loan) and that they relied on the statement to their detriment. *U.S. Nat. Bank of Oregon v. Fought*, 291 Or. 201, 220-21 (1981). Since 2016, however, Plaintiffs have alleged, in various federal and state actions, that neither Wells Fargo, nor Caliber, are authorized to enforce the loan. The Court agrees with Caliber that:

> For more than five years, the Clarks have sued their mortgage loan servicers (first, Wells Fargo, then Caliber, and now, Fay) alleging that they were not entitled to enforce the Loan. Simply put, at no time relevant to their claims was there a risk

---

[2] Plaintiffs attached an email from Richard Clark dated October 31, 2017 as Exhibit M to their fourth amended complaint. In that email, Clark objects to the scheduled mediation under the OFAP, stating "I just received the email showing that a resolution conference has been scheduled with Caliber Home Loans. This is over my objection that Caliber has not documented that they are the beneficiary." This email confirms that Plaintiffs' fraud claims, filed June 8, 2021, are barred by the two-year statute of limitations.

that the Clarks would rely on representations by Caliber. They have steadfastly refused to recognize U.S. Bank and its servicers' right to enforce the Loan and have refused to make payments.

Caliber Motion to Dismiss 19; ECF NO. 16. Plaintiffs' actions since 2016 demonstrate, as a matter of law, that they could not have been deceived by Caliber's statements that it was entitled to enforce the loan.[3]

Plaintiffs bring two Unlawful Debt Collection Practices Act claims against Defendant Fay Servicing. Both claims, brought under ORS 646.639, apply to "a debt buyer." ORS 646.639(1)(a) defines "debt buyer" as "a person that regularly engages in the business of purchasing charged-off debt for the purposed of collecting the charged-off debt . . . ." A "charged-off debt" is "a debt that a creditor treats as a loss or expense and not as an asset." ORS 646.639(1)(a). Plaintiffs' allegations, however, confirm that the loan is not a "charged-off debt." Rather than allege the debt was "charged-off," Plaintiffs allege that Caliber modified the loan and extended the terms of the loan to August 1, 2058. And Plaintiff's attach April 2021 correspondence from Fay indicating the current debt was $272,764.88. Fourth Am. Compl. Ex. N. Plaintiffs' allegations demonstrate Fay is not a "debt buyer" and Plaintiffs' claims under ORS 646.639(1)(a) necessarily fail.[4]

Plaintiffs bring Unlawful Trade Practices Act claims against Fay and Caliber. These claims rely on Plaintiffs' argument that Defendants were not entitled to assess fees or collect on the loan. The UTPA, however, provides that "Actions brought under this section shall be commenced within one year *from the discovery* of the unlawful method, act or practice." ORS 646.638(6) (emphasis

---

[3] Plaintiffs also have to demonstrate Calibers' statement was in fact false. Although Caliber submitted detailed exhibits laying out the assignments and modifications demonstrating Caliber's authority to enforce the loan, the Court presumes, for the purpose of this opinion, that Caliber had no authority to enforce the loan. Regardless, Plaintiffs cannot demonstrate that they were ignorant of that falsity or that they relied on the falsity. To the contrary, Plaintiffs have vigorously, and continuously, disputed Caliber's (and Fay's) authority to enforce the loan.
[4] Additionally, Fay provided documentation, properly subject to judicial notice as Plaintiffs reference the documents in their complaints, demonstrating Fay provided the required documentation. Motion to Dismiss 21-22 (citing Req. Judicial Notice, Ex. P).

added). As demonstrated above, Plaintiffs filed several actions challenging Defendants' right to collect under the note or enforce the deed of trust. Those actions demonstrate Plaintiffs were aware of Defendants' allegedly unlawful actions well before June 8, 2020. As Plaintiffs did not file this action under June 8, 2021, their UTPA claims are time-barred.

Similarly, Plaintiffs' slander of title claim is time-barred. Plaintiffs base this claim on the recording of the notice of default and election to sell and the trustee's notice of sale dated December 30, 2019. Fourth Am. Compl. ¶¶ 84-89, Ex. C. As Plaintiffs did not file this claim until July 1, 2021, the claim is barred by the one-year statute of limitation for slander of title claims.[5] For the same reason, Plaintiffs' defamation claim, based on the recording of "a fraudulent Notice of Intent and Election to Sell and Notice of Trustee's Sale," falls outside of the one-year statute of limitations for defamation claims. *Id.* at ¶ 91-92; *Cunningham v. Sony Pictures Ent.*, No. 3:17-cv-1686-SI, 2018 WL 1976449, at *2 (D. Or. Apr. 26, 2018).

The final issue is Plaintiffs' filing of a proposed Fifth Amended Complaint. Defendants move to strike that filing. The Court agrees with Defendants that the Fifth Amended Complaint suffers from the same deficiencies pointed out in the earlier complaints. MCM argues:

> Plaintiffs' 5AC is yet another attempt to cause delay and confusion, on the court docket and with respect to the gamesmanship on the part of the plaintiffs to prevent the case from ever moving forward to its ultimate conclusion. Plaintiffs' filing of the 5AC is a clear attempt to sidestep the pending Motion to Dismiss and the prior filed Motions to Dismiss (against the First Amended Complaint). In addition, granting leave to amend will require the MCM Defendants to incur additional attorneys' fees and costs to file new motions to dismiss to address the numerous meritless allegations—a highly prejudicial and circular pattern of obfuscation created by the plaintiffs who are using the judicial system to circumvent what they never want to face, the final disposition of their meritless claims.

---

[5] In the event the claim is not time-barred, Plaintiffs cannot demonstrate Fay acted with malice necessary to prevail on a claim for slander of title. *Miller v. C.C. Meisel Co.*, 183 Or. App. 148, 169 (2002). The Request for Judicial Notice filed in the 2020 federal action contains business records establishing, at the very least, LSF9's belief that it acquired Plaintiffs' loan. Even if those documents do not establish LSF9's authority to enforce the loan, and there is no indication in any document this Court has reviewed remotely challenges that chain of title, the documents establish LSF9 and, by extension, Fay, had a reasonable belief that they were authorized to enforce the loan.

> At this point, Plaintiffs have had four previous attempts to amend the Complaint to cure any deficiencies. Granting leave to amend the Compliant for the fifth time will not cure any supposed deficiencies.

Motion to Strike Fifth Am. Compl. 4-5; ECF No. 54.

The Court agrees. It appears to the Court that Plaintiffs' goal in numerous litigations is not to determine who they owe, but rather to prolong, for as long as possible, any attempted foreclosure proceedings. In Plaintiffs' latest filing, Plaintiffs acknowledge that "they know that a portion of their original mortgage principal remains unpaid." Resp. Obj. to Motion to Stay 2; ECF No. 82. Rather than pay what they owe on the note—a debt the Clarks acknowledged in obtaining a dismissal of their 2009 bankruptcy proceedings—Plaintiffs propose "that within a year after the successful conclusion of this case, they will donate the entire amount of their unpaid obligation to a non-profit organization that is located in Lane County, Oregon and that is substantially committed to the reduction of homelessness in Lane County . . . ." *Id.* The Court applauds Plaintiffs for offering to make a charitable contribution. But said contributions are not related, in any way, to the issues present here.

The Fifth Amended Complaint relies on the same mistaken assumptions underlying the earlier complaints; i.e., (1) that any successor of Wells Fargo's interest is barred from foreclosing and (2) that Plaintiffs may challenge the obligation despite what they affirmed during 2009 bankruptcy proceedings. Additionally, Plaintiffs' other claims are barred by the applicable statutes of limitations.

## CONCLUSION

Plaintiffs' Motion to Remand, ECF No. 15, is DENIED. The Motions to Dismiss, ECF Nos. 7, 16, 41, and 58, are GRANTED. Defendants' Motions to Strike, ECF Nos. 53, 54, 59, are GRANTED. U.S. Banks Request for Judicial Notice, ECF No. 41-1, and Caliber's Request for

Judicial Notice, ECF No. 16-1, are GRANTED. Canopy's Motion for Judgment on the

Pleadings, ECF No. 64, is GRANTED. Any remaining motions are DENIED as moot.

IT IS SO ORDERED.

DATED this 23rd day of March, 2023.

_____/s/ Michael McShane_____
**Michael J. McShane**
**United States District Judge**